UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

AIR PRODUCTS BLUE ENERGY, LLC

VERSUS

LIVINGSTON PARISH GOVERNMENT,
LIVINGSTON PARISH COUNCIL, and
JASON ARD

CIVIL ACTION

22-809-SDD-RLB

### RULING

Before the Court is the *Motion to Dismiss*[1] filed by Defendants Livingston Parish Government and Livingston Parish Council ("Livingston Parish" or "Defendants"). An *Opposition*[2] was filed by Plaintiff Air Products Blue Energy, LLC ("Air Products or Plaintiff"), to which Defendants filed a *Reply*.[3] The Court also addresses Plaintiff's *Motion for Preliminary Injunction*,[4] which Defendants do not oppose beyond arguing that this Court lacks subject matter jurisdiction to issue the requested relief.[5] For the following reasons, Defendant's *Motion to Dismiss* is denied, and Plaintiff's *Motion for Preliminary Injunction* is granted.

### I. BACKGROUND

Air Products challenges a local ordinance of Livingston Parish that provides for a twelve-month moratorium on all activities related to the drilling of Class V wells. Air Products, a corporation based in Pennsylvania, seeks to drill at least one Class V test well beneath Lake Maurepas and within Livingston Parish.[6] Air Products also plans to

---

[1] Rec. Doc. 97.
[2] Rec. Doc. 105.
[3] Rec. Doc. 117.
[4] Rec. Doc. 20.
[5] Rec. Doc. 26, p.1.
[6] Rec. Doc. 19, ¶ 40.

conduct a subsurface seismic survey of Lake Maurepas beginning in December 2022. Depending on the outcome of the testing and survey, Air Products anticipates building a larger carbon sequestration facility beneath the lake.[7] This facility will inject and store carbon dioxide underground with the aim of reducing greenhouse gas emissions.[8]

The Louisiana Legislature has expressly authorized the use of State property for carbon sequestration projects.[9] On October 13, 2021, Air Products entered into an agreement with the State (the "Storage Agreement"), granting Air Products:

> the sole and exclusive right to control, or perform all activities on the Property as may be necessary or incidental to the Permitted Purposes, including, but not limited to . . . viewing and performing testing, such as geological and geophysical surveys, seismic tests, and other testing and data relating to the Property and Storage Reservoirs to determine the capacity and suitability of the Storage Reservoirs for the Permitted Purposes.[10]

The Storage Agreement pertains to state-owned water bottoms in Lake Maurepas, a portion of which are located within the boundaries of Livingston Parish.[11]

In early September 2022, Air Products commenced preparatory work for the drilling of the Class V test wells.[12] However, Air Products discontinued its work later that month when it learned that Livingston Parish was considering steps to prohibit such activity.[13] On October 13, 2022, Livingston Parish adopted a twelve-month moratorium ("the Moratorium") on "any activities associated with Class V wells where the well is specific to geologic testing of rock formation, monitoring, drilling, or injecting of CO2 for long term

---

[7] *Id.*, ¶ 24.
[8] *Id.*, ¶ 26.
[9] La. R.S. 30:209(4)(e)(ii) (providing that the State may "enter into operating agreements whereby the state receives a share of revenues from the storage of . . . carbon dioxide . . . [by] establishing a . . . carbon dioxide storage facility in an underground reservoir").
[10] Rec. Doc. 20-2, p. 18.
[11] *Id.*, p. 2.
[12] Rec. Doc. 19, ¶ 45.
[13] *Id.*

storage."[14]

Air Products filed this suit, seeking both declaratory and injunctive relief. Air Products moves for a preliminary injunction that would allow it to carry on with its carbon sequestration project—ideally, by December 21, 2022.[15] According to Air Products, its upcoming plans involve two specific activities. First, Air Products seeks to continue its preparatory work for the drilling of Class V test wells, including securing access routes and preparing the well pad location.[16] Second, Air Products plans to conduct a seismic survey of Lake Maurepas.[17] It is undisputed that Air Products, through its contractor, is fully permitted by the State of Louisiana to perform both activities.[18]

In response to the instant suit and *Motion for Preliminary Injunction,* Defendants filed a *Motion to Dismiss* for lack of subject matter jurisdiction. Because subject matter jurisdiction affects the Court's authority to adjudicate the case before it, the Court addresses the jurisdictional issue first.[19]

## II.  Motion to Dismiss

Livingston Parish moves to dismiss, asserting a lack of subjection matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), may be asserted at any time.[20] The party asserting that the court has jurisdiction bears the burden of proving that the court may adjudicate the case.[21] In determining whether it has subject matter jurisdiction, the court may look at the

---

[14] Rec. Doc. 4 (certified copy of Ordinance 22-49).
[15] Rec. Doc. 20-1, p. 1.
[16] *Id.*, p. 2.
[17] *Id.*
[18] Rec. Doc. 19, ¶ 42.
[19] *See Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir.1994).
[20] *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir.1999).
[21] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).

complaint alone, the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[22] A 12(b)(1) motion should be granted only if it appears certain that the plaintiff can prove no set of facts that would entitle him to relief.[23]

In disputing subject matter jurisdiction, Livingston Parish contends that (1) Air Products lacks standing to challenge the Moratorium and (2) Air Products' request for a preliminary injunction is not sufficiently ripe for adjudication. The Court addresses each issue in turn.

1. Standing

"The standing doctrine is a threshold inquiry to adjudication, which defines and limits the role of the judiciary."[24] "It is well settled that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case."[25] "In the absence of standing, there is no 'case or controversy' between the plaintiff and defendant which serves as the basis for the exercise of judicial power under Article III of the constitution."[26] "The key question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant federal court jurisdiction."[27]

"[T]he irreducible constitutional minimum of standing contains three elements."[28] "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

---

[22] *Id.*
[23] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998); *see also Ramming*, 281 F.3d at 161.
[24] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 570 F. Supp. 2d 851, 853 (E.D. La. 2008) (citing *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citation omitted)).
[25] *Id.*
[26] *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).
[27] *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).
[28] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

conjectural or hypothetical."[29] Second, "the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court."[30] "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[31] The party invoking federal jurisdiction bears the burden of establishing these elements.[32]

Here, Livingston Parish only challenges the first element, that is, it argues that Air Products has not or will not imminently suffer an injury in fact. According to Livingston Parish, the only harm Air Products can show is that a 12 month pause on the activity in question "might theoretically affect the income that could be made by it."[33] Air Products counters that the Moratorium improperly restricts and impedes its rights contained in the Storage Agreement and its rights under the various permits it has obtained.

The Court finds this case to be factually similar to and controlled by the Fifth Circuit case *Energy Management Corp. v. City of Shreveport*.[34] There, the City of Shreveport passed an ordinance barring drilling within 1,000 feet of Cross Lake.[35] The plaintiff, EMC, had already "acquired several mineral leases granted by the state to drill and mine under and around Cross lake" although it lacked a drilling permit.[36] Raising the issue of standing *sua sponte*, the Fifth Circuit concluded that EMC had sufficiently stated an injury in fact because "its right to exploit its mineral interests by seeking a drilling permit . . . is a legally protected property right."[37] The Fifth Circuit continued: "The City of Shreveport's

---

[29] *Id.*
[30] *Id.* at 560–61 (cleaned up) (internal quotation marks omitted).
[31] *Id. at 561.*
[32] *Id.*
[33] Rec. Doc. 21-2, p. 5.
[34] 397 F.3d 297 (5th Cir. 2005).
[35] *Id.* at 300.
[36] *Id.*
[37] *Id.* at 302.

prohibition of EMC's right to drill impedes that right and, according to EMC's allegations, has caused it economic loss."[38]

In this case, the State of Louisiana has given Plaintiff the right to conduct seismic surveys, drill wells and conduct other testing pursuant to the terms of the Storage Agreement.[39] The Moratorium directly impedes those rights. In fact, Plaintiff has a stronger standing argument than EMC because, unlike EMC, Plaintiff has already expended resources obtaining the necessary permits and authorizations to commence seismic work and engage in Class V preparatory work. Plaintiff alleges that it has expended more than $75,000 to prepare for seismic exploration and test well development and the money will be lost if Plaintiff is unable to proceed with its permitted activities. The Moratorium's 12-month limitation is of little conciliation according to Plaintiff because Plaintiff's permits are not indefinite and project delays will "prevent Air Products from completing permitted activities within the timeframes directed by state and federal regulators."[40] Accordingly, Plaintiff has sufficiently pleaded actual and imminent injury, including both economic and non-economic loss, occasioned by the Moratorium.

2. Ripeness

Defendants also argue that this case is not ripe for adjudication. "While standing is concerned with who is a proper party to litigate a particular matter, ripeness . . . determine[s] when that litigation may occur."[41] "Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet

---

[38] *Id.*
[39] Rec. Doc. 20-2, p. 18.
[40] Rec. Doc. 19, ¶ 78.
[41] *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 n.12 (5th Cir. 2008) (quoting Erwin Chemerinsky, *Federal Jurisdiction* § 2.4.1 (5th ed. 2007)) (internal quotation marks omitted).

justiciable."[42] The basic rationale behind the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."[43] To determine whether claims are ripe, Courts should evaluate (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration.[44] As relevant here, the ripeness doctrine allows "pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent."[45]

Here, enforcement action against Plaintiff is imminent. Plaintiff has factually alleged that its work is fully permitted and will commence in Livingston Parish in December 2022 (likely as soon as this ruling is issued, if not before).[46] Defendants have made no representation that they will voluntarily repeal the Moratorium or refrain from enforcing it. Should enforcement action occur, Plaintiff could face prosecution for "a misdemeanor punishable by a fine of not more than five hundred dollars ($500.00) or a term of imprisonment of not more than thirty (30) days in the Parish jail, or both."[47] The imminent risk of a fine or imprisonment is sufficient to confer standing and makes this controversy ripe for adjudication. The Court has jurisdiction over the claims before it.

Last, Defendants recast their 12(b)(1) argument as a 12(b)(6) motion in the final paragraphs of their brief, arguing that because Plaintiff has pled insufficient facts to show

---

[42] *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) (citing *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam)).
[43] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).
[44] *Lopez*, 617 F.3d at 341 (citing *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007), cert. denied, 129 S. Ct. 32 (2008)).
[45] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).
[46] *See* Rec. Doc. 19, ¶ 60.
[47] Livingston Parish Code of Ordinances § 1-8.

standing and ripeness, Plaintiff has failed to state a claim that is plausible on its face.[48] However, there is no daylight between these theories. Because the Court decided the jurisdictional issue based solely on the pleadings, a 12(b)(6) inquiry on the same question would be analytically the same and is therefore unnecessary. Defendant's 12(b)(6) motion is denied.

### III.     PRELIMINARY INJUNCTION

Air Products seeks a preliminary injunction prohibiting the enforcement of the Moratorium insofar as it bans seismic surveys, Class V injection wells, and associated activities. Air Products argues that the Moratorium is preempted by federal and state law and is therefore unenforceable.

Defendants do not controvert the merits of Plaintiff's request. Rather, they merely "reassert, re-allege, and re-aver the positions and arguments set forth in their memorandum in support of their pending motion to dismiss."[49] What this really means, in layman's terms, is that Defendants have placed all of their eggs in the jurisdiction basket. Because Plaintiff's request for a preliminary injunction is unopposed, there are no disputed facts and hence the Court does need to hold an evidentiary hearing as to the preliminary injunction.

Nevertheless, "a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion" as to each element.[50] To prevail on a motion for a preliminary injunction, the movant must establish the following essential elements: (1) a substantial likelihood of success on the

---

[48] *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) ("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).
[49] Rec. Doc. 26, p. 1.
[50] *Tex. Med. Providers Performing Abortion Servs. v. Lakey,* 667 F.3d 570, 574 (5th Cir.2012).

merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not do disservice to the public interest.[51] The Court addresses each element in turn.

1. Likelihood of Success on the Merits

Air Products argues that Livingston Parish's Moratorium is preempted by federal law via the Safe Drinking Water Act ("SDWA"). The SDWA establishes a national program ("the UIC program") for regulating injection wells in order to protect underground sources of drinking water.[52] The SDWA authorizes the EPA to issue regulations establishing standards for UIC programs and allows each state to seek approval to administer its own UIC program based on those federal requirements.[53] Section 1421, 42 U.S.C. § 300h, identifies the minimum requirements proposed state UIC regulatory programs must meet in order for a state to be granted primary enforcement authority (referred to as "primacy").[54] Pursuant to the SDWA, the State of Louisiana established a UIC program and was granted primacy over Class I, II, III, IV, and V injection wells.[55]

Air Products argues that the SDWA directly prevents the States and their subdivisions from altogether prohibiting UIC activity. Because injection wells are regulated by the SDWA, Plaintiff argues, states cannot "prohibit the exact type of well that Congress has authorized under the SDWA underground injection program."[56]

Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state law is preempted in

---

[51] *Id.*
[52] *See* 42 U.S.C. §§ 300g, 300h.
[53] *See id.* §§ 300h(a), 300h–1(b).
[54] *Id.*
[55] 40 C.F.R. § 147.950.
[56] Rec. Doc. 20-1, p. 15.

three circumstances. "First, Congress can define explicitly the extent to which its enactments pre-empt state law."[57] "Second, in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively."[58] "Such an intent may be inferred from a 'scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'"[59] "Finally, state law is preempted to the extent that it actually conflicts with federal law."[60] A conflict exists "where it is impossible for a private party to comply with both state and federal requirements"[61] or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[62]

First, the SDWA expressly limits its preemptory reach. The SDWA contains a "savings clause," which provides:

> Nothing in this subchapter shall diminish any authority of a State or political subdivision to adopt or enforce any law or regulation respecting underground injection but no such law or regulation shall relieve any person of any requirement otherwise applicable under this subchapter.[63]

As several courts have noted, the savings clause allows states to regulate underground injection so long as local rules do not impinge on EPA regulations.[64] Field preemption is

---

[57] *English v. General Elec. Co.*, 496 U.S. 72, 78 (1990).
[58] *Id.* at 79.
[59] *Id.* (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).
[60] *Id.*
[61] *See, e.g., Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963)
[62] *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).
[63] 42 U.S.C. § 300h-2(d).
[64] *See, e.g., Bath Petroleum Storage, Inc. v. Sovas*, 309 F.Supp.2d 357, 367-68 (N.D.N.Y. 2004)

off the table for this reason.

Regarding conflict preemption, Livingston Parish argues that the Moratorium conflicts with the SDWA because it prohibits the exact type of well that Congress has clearly authorized. However, the savings clause shows that the SDWA sets a floor for UIC standards, not a ceiling.[65] The SDWA was enacted to ensure that public water supply systems meet minimum national standards for the protection of public health.[66] The fact that Congress has established minimum standards for UIC activity does not mean that states are forbidden from implementing stricter standards, including, at the extreme, an outright prohibition on certain underground injection activities.[67] As the savings clause makes clear, Congress has rejected the need for uniformity in the regulation of underground injection activity and recognized that there is value in encouraging the development of local standards stricter than the federal minimums.

Still, the Court must consider whether the Moratorium—a local ordinance—is preempted by state law via the State's UIC program. Pursuant to the Louisiana Constitution, Article VI, a municipal authority governed by a home rule charter, such as Livingston Parish, possesses powers in affairs of local concern within its jurisdiction that are as broad as those of the State, except when limited by the Constitution, laws permitted by the Constitution, or its own home rule charter.[68] However, that same article sets forth a constitutional limitation on the broad powers of a home rule charter government, providing that "[n]otwithstanding any provision of this Article, the police power of the state shall never be abridged." Article VI, § 9(B). Stated differently, no local government can

---

[65] *See id.*
[66] *National Wildlife Fed'n v. United States EPA,* 980 F.2d 765, 768 (D.C. Cir. 1992).
[67] Nor is it impossible for Plaintiff to comply with both federal law and the Moratorium. Plaintiff cannot violate federal UIC standards if he altogether refrains from engaging in underground injection activities.
[68] *Francis v. Morial,* 455 So.2d 1168, 1171 (La.1984).

take action that would abridge the police power of the State.

Here, the Louisiana Legislature granted the Louisiana Office of Conservation the power to regulate underground injection wells, pursuant to the state's EPA-approved UIC program.[69] There is no doubt that the authority of the Office of Conservation to regulate underground injection wells is an exercise of the police power of the State.[70] The regulation of UIC wells relates to the health, safety, and welfare of the state's residents— indeed, the entire purpose of the State's UIC program is to conserve Louisiana's underground drinking water sources.

The analysis does not end there, however. The Court must determine whether the Moratorium is actually preempted by the State's exercise of police power. Similar to the analysis above, local ordinances are subject to both field and conflict preemption.[71] "Local power is not preempted unless it was the clear and manifest purpose of the legislature to do so, or the exercise of dual authority is repugnant to a legislative objective; if there is no express provision mandating preemption, the courts will determine the legislative intent by examining the pervasiveness of the state regulatory scheme, the need for state uniformity, and the danger of conflict between the enforcement of local laws and the administration of the state program."[72]

---

[69] *See* R.S. 30:4.1.
[70] *See St. Tammany Parish Gov't v. Welsh*, 199 So.3d 3, 8, 9 (La. App. 1st Cir. 2016) ("The [Conservation] Commissioner's power is an exercise of the State's police powers.").
[71] *U.S. Aircraft Ins. Grp. v. Global Tower, LLC*, 298 So.3d 214, 229 (La. App. 3d Cir. 2020) (stating that "[s]imilar analyses are employed, in both the state and federal spheres, to resolve preemption issues").
[72] *Palermo Land Co. v. Planning Commission of Calcasieu Parish*, 561 So. 2d 482, 497 (La. 1990).

The Louisiana Constitution states that the "natural resources of the state" are to "be protected, conserved, and replenished" and directs the legislature to "enact laws to implement this policy."[73] Pursuant to this constitutional mandate, and in accordance with the SDWA, the State has enacted an extensive body of laws and regulations governing the subsurface injection of hazardous and nonhazardous waste fluids, subsurface storage of liquid and gaseous fluids, mineral solution mining, injection for enhanced oil recovery, and carbon dioxide sequestration.[74] The pervasive extent of this law strongly suggests that the Legislature intended to preempt the field of underground injection control in its entirety. The Court concludes that the State of Louisiana has circumscribed the Moratorium by undertaking to allow UIC wells through its UIC program.

Indeed, in *Vanguard Environmental, LLC v. Terrebonne Parish Consol. Gov't,* the Louisiana First Circuit Court of Appeal struck down an ordinance regulating the location of Class II disposal wells.[75] The Court held:

> [T]he legislature has given authority over the location, design, and operation of non-hazardous waste disposal facilities . . . to the Office of Conservation, through the Commissioner of Conservation. La. R.S. 30:4(I)(7). We conclude that the regulation of the disposal of any waste product into the subsurface by means of a disposal well, including siting, is within the exclusive jurisdiction of the Office of Conservation. *Desormeaux Enterprises, Inc.,* 568 So.2d at 215. The express terms of our pertinent statutory law and the regulations adopted pursuant thereto are pervasive and clearly manifest a legislative intention to preempt the field in its entirety. *Id.*[76]

Although Vanguard addresses disposal wells (not injection wells, as in this case), the analysis is nonetheless instructive. The Court sees no reason to limit *Vanguard* to its particular facts given the pervasive extent of State regulation across the entire field of

---

[73] La. Const. art. IX, § 1.
[74] *See* R.S. 30:4.1; La. Admin. Code tit. 43, Parts XVII and XIX.
[75] 2012–1998, at *6 (La.App. 1st Cir.6/11/13); 2013 WL 4426508.
[76] *Id.*

underground injection control. The need for uniformity strongly mitigates against a piecemeal approach.[77] The Court concludes that the Moratorium is preempted insofar as it encroaches on the field of underground injection control and attempts to regulate the drilling of Class V test wells and other wells used for long term storage of carbon dioxide. The Moratorium's ban on seismic surveying is also preempted because it cannot be understood apart from the underlying ban on in-county injection wells. For these reasons, Plaintiff has shown a likelihood of success on the merits.

2. Irreparable Harm

Irreparable harm is that which "cannot be undone through monetary damages."[78] In its *Amended Complaint*, Air Products asserts several forms of injury that are not ascertainable in monetary terms:

> Defendants' application and enforcement of [the Moratorium] . . . will cause project delays and prevent Air Products from completing permitted activities within the timeframes directed by state and federal regulators, thereby harming Air Products' goodwill, competitive advantage, and economic interests in ways that are incapable of ascertainment in monetary terms, or especially difficult or speculative to establish in monetary terms.[79]

To be sure, a loss of goodwill is recognized as an injury that is incapable of ascertainment in monetary terms.[80]

Further, even if Plaintiff's damages are fully reduceable to monetary terms, those damages are not available in this suit. The Fifth Circuit has suggested that the irreparable

---

[77] *See Palermo,* 561 So.2d at 497 (citing *Hildebrand v. City of New Orleans,* 549 So.2d 1218, 1227 (La. 1989)).
[78] *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013).
[79] Rec. Doc. 19, ¶ 78.
[80] *H&E Equip. Servs. v. Harley*, C.A. No. 22-103-SDD-RLB, 2022 U.S. Dist. LEXIS 31781 (M.D. La. Feb. 23, 2022) (quoting *Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612, 626 (W.D. La. 2010)) (internal quotation marks omitted).

harm element is met if full relief cannot be obtained in the course of the *same* litigation.[81] Because Plaintiff only seeks declarative and injunctive relief, the Court is satisfied that Plaintiff faces irreparable harm if a preliminary injunction is denied.

### 3. Remaining Equitable Factors

The third and fourth factors ask whether a preliminary injunction would disproportionately impact the adverse party and harm the public interest. As a general rule, these factors are automatically satisfied in cases where a movant merely seeks correct application of the law (and has shown a likelihood of success on the merits). Indeed, a defendant "cannot suffer harm from an injunction that merely ends an unlawful practice because "[g]ranting preliminary injunctive relief will simply require [Defendants] to comply with their legal obligations."[82] Similarly, "[a]n injunction to enforce the correct application of the law, in and of itself, serves the public interest,"[83] and "there is no public interest in the enforcement of an unlawful ordinance."[84] Because the Moratorium is preempted by state law, these factors are satisfied.

In sum, Plaintiff has satisfied its burden of proof as to all four elements and, thus, a preliminary injunction shall issue.

### IV. CONCLUSION

For the reasons set forth above, Defendant's *Motion to Dismiss*[85] is DENIED.

---

[81] *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("However, the mere fact that economic damages may be available does not always mean that a remedy at law is "adequate." For example, some courts have found that a remedy at law is inadequate if legal redress may be obtained only by pursuing a multiplicity of actions.").
[82] *Abdi v. Duke*, 280 F. Supp. 3d 373, 410 (W.D.N.Y. 2017).
[83] *Centurum Info. Tech. Inc. v. Geocent, LLC*, C.A. No. 21-82, 2021 U.S. Dist. LEXIS 27661, at *46 (citing *Daniels Health Scis., LLC v. Vascular Health Scis.*, LLC, 710 F.3d 579, 585 (5th Cir. 2013)).
[84] *ESI/Employee Sols., L.P. v. City of Dallas*, 531 F. Supp. 3d 1181, 1197 (E.D. Tex. 2021) (citing *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d App. 2013)).
[85] Rec. Doc. 97.

Plaintiff's *Motion for Preliminary Injunction*[86] is GRANTED, and the Court enters the following injunctive relief:

**IT IS ORDERED** that Defendants Livingston Parish Government, Livingston Parish Council, and Jason Ard, solely in his official capacity as Sheriff for the Parish of Livingston—and any person in active concert or participation with Defendants who receives notice of this order—are enjoined from and must immediately cease enforcing Ordinance No. 22-49 of the Livingston Parish Council, including insofar as it concerns seismic surveys, Class V injection wells, and associated activities.

**IT IS FURTHER ORDERED** that Defendants immediately issue written notice, that includes a copy of this Injunction, to Defendants' employees who are involved in enforcing Ordinance No. 22-49 or the oversight of such enforcement and inform such employees that Defendants have been enjoined from enforcing Ordinance No. 22-49 insofar as it concerns seismic surveys and Class V injection wells.

**IT IS FURTHER ORDERED** that, within ten (10) days following this Injunction, Defendants shall provide Plaintiff with an affidavit identifying the names, titles, addresses, and telephone numbers of the persons to whom Defendants have served with a copy of this Injunction in compliance with the previous paragraph.

**IT IS FURTHER ORDERED** that Plaintiff does not need to give security under Rule 65(c) of the Federal Rules of Civil Procedure.

Signed in Baton Rouge, Louisiana, this day, December 26, 2022.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[86] Rec. Doc. 20.